UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
SAN ANGELO DIVISION

GABRIEL TORRES-CORONADO

     Petitioner,

v.

PAMELA BONDI, et al.,

     Respondents.

No. 6:26-CV-055-H

## ORDER

Gabriel Torres-Coronado entered the United States illegally just over two years ago. He was detained at the border and released on recognizance pending removal. ICE has now re-detained Torres-Coronado for the remainder of his removal proceedings. His petition for a writ of habeas corpus (Dkt. No. 8) seeks relief as a member of two separate actions filed in the Northern and Central Districts of California. He also seeks relief under the Fifth Amendment, the INA, and associated regulations.

The petition fails on each point. First, under binding Fifth Circuit precedent, Torres-Coronado is properly detained under Section 1225(b)(2)(A) of the INA. *See Buenrostro-Mendez v. Bondi*, 166 F.4th 494 (5th Cir. 2026). Second, as this Court has previously explained, neither the substantive nor procedural veins of the Due Process Clause entitle aliens to an individualized bond hearing during removal proceedings. Third, the Northern District of California order in *National TPS Alliance v. Noem* does not purport to bind other district courts, and the Supreme Court has recently permitted the Trump administration to revoke TPS status for Venezuelan nationals. Finally, the Central District of California class action in *Maldonado Bautista v. Santacruz* has been stayed by the Ninth Circuit; and, at any rate, it lacks the authority to bind this Court.

Because the legal arguments and facts presented in the petition are indistinguishable from those addressed in the Court's prior decisions denying relief, "it appears from the application that the applicant or person detained is not entitled" to a writ of habeas corpus. 28 U.S.C. § 2243. Thus, while the Court would ordinarily issue an order to show cause, it exercises its discretion to forgo that step here. *Id.*; *see Wottlin v. Fleming*, 136 F.3d 1032, 1034 (5th Cir. 1998). The petition (Dkt. No. 8) is denied.

### 1. Background

Torres-Coronado is a native and citizen of Venezuela Dkt. No. 8 at 2. He was detained while illegally crossing into the United States in 2023. Dkt. No. 8 at 2. Amidst a wave of illegal entries across the U.S.-Mexico border and a resulting lack of space to hold detainees, ICE released Torres-Coronado into the United States on an order of recognizance. *Id.* at 2–3. At that time, ICE issued Torres-Coronado a Notice to Appear, charging him with removability as an alien "present in the United States without being admitted or paroled, or who arrived in the United States at any time or place other than as designated by the Secretary of Homeland Security." *Id.* at 3; *see* 8 U.S.C. § 1182(a)(6)(A)(i). As a Venezuelan national, Torres-Coronado was previously entitled to TPS status, but the Trump administration terminated TPS status in 2025. *See Noem v. Nat'l TPS All.*, 146 S. Ct. 23 (2025).

ICE re-detained Torres-Coronado in September 2025; he was briefly released and was detained yet again in January 2026. Dkt. No. 8 at 3–4. He remains in custody at the Eden Detention Center in Eden, Texas. *Id.* at 2.

Torres-Coronado petitioned for a writ of habeas corpus in the Dallas Division of the Northern District of Texas. Dkt. No. 1. Because Torres-Coronado was not detained in that

division, a United States Magistrate Judge transferred the case to this Court. Dkt. No. 4. Torres-Coronado subsequently moved to amend his petition (Dkt. No. 6), which the Court granted (Dkt. No. 7). He also moved for a temporary restraining order (Dkt. No. 9), which the Court denied (Dkt. No. 10).

Torres Coronado's new habeas petition states four claims for relief. First, he contends that his detention without bond violates the INA and its associated regulations. Dkt. No. 8 at 28. Second, he contends that his detention violates his Fifth Amendment rights to substantive and procedural due process. *Id.* at 24–28. Third, he relies on the Northern District of California's December 2025 order declaring—notwithstanding the Supreme Court's stay of relief in that case—that the government's termination of the Venezuelan TPS program was unlawful. *Nat'l TPS All. v. Noem*, No. 25-CV-1766, 2025 WL 3539156 (N.D. Cal. Dec. 10, 2025); Dkt. No. 8 at 6–8, 24. Last, he contends that he is entitled to release as a member of the Bond Eligible Class purportedly certified in *Maldonado Bautista v. Santacruz*. *See* ___ F. Supp. 3d ___, No. 5:25-CV-1873, 2026 WL 468284 (C.D. Cal. Feb. 18, 2026) (purporting to vacate *Yajure Hurtado*); Dkt. No. 8 at 17–20.

Last month, the Fifth Circuit issued its decision in *Buenrostro-Mendez*, which agreed with *Yajure Hurtado* and upheld the government's mandatory-detention policy under Section 1225. *See* 166 F.4th at 498. The Fifth Circuit turned to the plain language of Section 1225, which provides that "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien *shall be detained* for a proceeding under section 1229a of this title." 8 U.S.C. § 1225(b)(2)(A). The Fifth Circuit found "no material disjunction" between the phrases "applicant for admission" and "seeking admission," and

– 3 –

thus concluded that all applicants for admission fall within Section 1225(b)(2)(A)'s grasp.

*Buenrostro-Mendez*, 166 F.4th at 502 (quoting *Garibay-Robledo v. Noem*, ___ F. Supp. 3d ___,

No. 1:25-CV-177, 2026 WL 81679, at *5 (N.D. Tex. Jan. 9, 2026)).

**2.    Legal Standard**

"[A]bsent suspension, the writ of habeas corpus remains available to every individual

detained within the United States."  *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S.

Const. art. I, § 9, cl. 2).  With 28 U.S.C. § 2241, Congress authorized federal courts to

resolve habeas petitions, including in immigration-detention cases.  *Zadvydas v. Davis*, 533

U.S. 678, 687–88 (2001).  Habeas exists solely to "grant relief from unlawful imprisonment

or custody."  *Pierre v. United States*, 525 F.2d 933, 935–36 (5th Cir. 1976).  Thus, for the writ

to issue, the petitioner must be "in custody in violation of the Constitution or laws or

treaties of the United States."  28 U.S.C. § 2241(c)(3); *see Orellana v. Kyle*, 65 F.3d 29, 31 (5th

Cir. 1995).  A court considering a habeas petition must "determine the facts, and dispose of

the matter as law and justice require."  28 U.S.C. § 2243.

**3.    Analysis**

As noted above, Torres-Coronado seeks relief under two separate California district

court decisions, and under the INA and Due Process Clause.  As explained below,

*Buenrostro-Mendez* forecloses Torres-Coronado's statutory claim.  The Court has also

previously considered the bindingness of *Maldonado Bautista*,[1] and Torres-Coronado's

*National TPS Alliance* claim implicates identical legal principles.  The Court has also

considered whether the Due Process Clause entitles illegal aliens to individualized bond

---

[1] *See Calderon Lopez v. Lyons*, ___ F. Supp. 3d ___, No. 1:25-CV-226, 2025 WL 3683918 (N.D. Tex. Dec. 19, 2025); *Jandres-Ordonez v. Bondi*, No. 6:25-CV-084, 2026 WL 274493 (N.D. Tex. Jan. 23, 2026).

hearings in numerous prior cases.[2]  Even so, the Court considers the arguments raised in

Torres-Coronado's briefing to address whether his detention violates statutory and

constitutional law.  It does not.

> **A.**    ***Buenrostro-Mendez* forecloses Torres-Coronado's INA and regulatory claims.**

First is Torres-Coronado's INA claim.  Dkt. No. 8 at 28–29.  Torres-Coronado is an

"applicant for admission" within the meaning of Section 1225(a)(1).  Section 1225 of the

INA broadly defines "applicant for admission" as "[a]n alien present in the United States

who has not been admitted or who arrives in the United States."  8 U.S.C. § 1225(a)(1).

Torres-Coronado is an "alien."  He is "present in the United States."  And he "has not been

admitted" because he did not "lawful[ly] ent[er] [the country] after inspection and

authorization by an immigration officer."  *Id.* § 1101(a)(13)(A) (defining "admission" and

"admitted").  As an applicant for admission, binding Fifth Circuit precedent requires that he

be detained without bond under Section 1225(b)(2)(A).  *See Buenrostro-Mendez*, 166 F.4th at

498.  Thus, Torres-Coronado's INA claim fails.[3]

Torres-Coronado likewise claims that the application of Section 1225(b)(2)(A)

violates the INA's implementing regulations.  Dkt. No. 8 at 28.  But even if his reading of

the relevant regulations were correct, he is not entitled to relief.  "[T]he government's past

practice" of treating unadmitted aliens as subject to Section 1226(a) "has little to do with the

---

[2] *Diaz Patino v. Villegas*, ___ F. Supp. 3d ___, No. 1:25-CV-276, 2026 WL 673166 (N.D. Tex. Mar. 9, 2026); *Higareda-Cano v. Noem*, No. 1:25-CV-225, 2026 WL 274495 (N.D. Tex. Jan. 30, 2026); *Goyo Martinez v. Villegas*, No. 1:25-CV-256, 2026 WL 114418 (N.D. Tex. Jan. 15, 2026); *Garibay-Robledo*, 2026 WL 81679; *Gomez Hernandez v. Lyons*, No. 1:25-CV-216, 2026 WL 31775 (N.D. Tex. Jan. 6, 2026); *Montelongo Zuniga v. Lyons*, ___ F. Supp. 3d ___, No. 1:25-CV-221, 2025 WL 3755126 (N.D. Tex. Dec. 29, 2025).

[3] Even if this Court were not bound by *Buenrostro-Mendez*, it would have reached the same result for the reasons discussed in its numerous prior decisions on this issue.  *Supra*, n.3.

statute's text." *Buenrostro-Mendez*, 166 F.4th at 506.  Insofar as such regulations "contradict the plain text of [Section] 1225(b)(2)(A), the statute governs because 'a valid statute always prevails over a conflicting regulation.'" *Benitez v. Bradford*, No. 4:25-CV-6178, 2026 WL 82235, at *1 (S.D. Tex. Jan. 8, 2026) (Eskridge, J.) (quoting *Duarte v. Mayorkas*, 27 F.4th 1044, 1060 n.13 (5th Cir. 2022)).

> B.    **The Due Process Clause does not require the government to give Torres-Coronado a bond hearing.**

Next is Torres-Coronado's claim that the government's refusal to provide a bond hearing violates the Due Process Clause of the Fifth Amendment.  Dkt. No. 8 at 26–28.  Because *Buenrostro-Mendez* did not directly address this question, the Court turns to Torres-Coronado's arguments.  He argues that his case presents a mixture of both procedural and substantive due process issues.  *See id.*  But either way, he is not entitled to relief.

Start with substantive due process.  That doctrine protects "only 'those fundamental rights and liberties which are, objectively, deeply rooted in this Nation's history and tradition.'" *Dep't of State v. Muñoz*, 602 U.S. 899, 910 (2024) (quoting *Washington v. Glucksberg*, 521 U.S. 702, 720–21 (1997)).  While still recognizing due-process rights for aliens present in the United States, *see, e.g.*, *Trump v. J.G.G.*, 604 U.S. 670, 673 (2025), the Supreme Court has long affirmed the constitutionality of executive immigration procedures.  The "through line of history," the Supreme Court recently explained, is "recognition of the Government's sovereign authority to set the terms governing the admission and exclusion of noncitizens." *Muñoz*, 602 U.S. at 911–12.  To that end, "Congress regularly makes rules that would be unacceptable if applied to citizens." *Mathews v. Diaz*, 426 U.S. 67, 80 (1976).

– 6 –

The principle is no less true for immigration detention.  In fact, the Supreme Court has endorsed the constitutionality of detaining aliens without bond during the pendency of removal proceedings.  In *Demore v. Kim*, the Supreme Court acknowledged that "the Fifth Amendment entitles aliens to due process of law in deportation proceedings."  538 U.S. 510, 523 (2003) (quoting *Reno v. Flores*, 507 U.S. 292, 306 (1993)).  But it clarified that "detention during deportation proceedings" is nevertheless a "constitutionally valid aspect of the deportation process."  *Id.*  Indeed, "when the Government deals with deportable aliens, the Due Process Clause does not require it to employ the least burdensome means to accomplish its goal."  *Id.* at 528.  It follows that "the Government may constitutionally detain deportable aliens during the limited period necessary for their removal proceedings."  *Id.* at 526.  Against that backdrop, the notion that substantive due process requires a bond hearing is untenable.

A procedural due process claim fares no better.  As an "applicant for admission," Petitioner has "only those rights regarding admission that Congress has provided by statute."  *DHS v. Thuraissigiam*, 591 U.S. 103, 140 (2020); *see Landon v. Plasencia*, 459 U.S. 21, 32 (1982) ("This Court has long held that an alien seeking initial admission to the United States requests a privilege and has no constitutional rights regarding his application, for the power to admit or exclude aliens is a sovereign prerogative.").

Despite this, Torres-Coronado relies on the three-factor balancing test from *Mathews v. Eldridge*, 424 U.S. 319 (1976).  *See* Dkt. No. 8 at 16–17.  The *Mathews* test, while common, is not the only tool for resolving procedural due process challenges.  The Supreme Court said as much: "[W]e have never viewed *Mathews* as announcing an all-embracing test for deciding due process claims."  *Dusenbery v. United States*, 534 U.S. 161, 168 (2002).  In fact,

the "Supreme Court when confronted with constitutional challenges to immigration detention has not resolved them through express application of *Mathews*." *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206 (9th Cir. 2022).

The application of *Mathews* to Section 1226 cases is "unwarranted on the test's own terms." *Ladak v. Noem*, ___ F. Supp. 3d ___, No. 1:25-CV-194, 2025 WL 3764016, at *7 (N.D. Tex. Dec. 30, 2025). The Supreme Court applied *Mathews* in *Landon v. Plasencia*, emphasizing that its balancing test was appropriate for "long-time lawful permanent resident[s]" in contrast to "detentions of aliens at the border or returning lawful permanent residents who had spent time abroad." *Id.* (citing 459 U.S. 21, 32–34 (1982)). Aliens in the former category have "gain[ed] admission to our country and [have begun] to develop the ties that go with permanent residence," meriting a level of due process more analogous to that of a citizen. *Landon*, 459 U.S. at 32. In the latter category, aliens "request[] a privilege and [have] no constitutional rights." *Id.*; *Thuraissigiam*, 591 U.S. at 138–39 ("Whatever the procedure authorized by Congress is, it is due process as far as an alien denied entry is concerned.") (quotation omitted). Critically, aliens who are released into the United States pending removal "are treated for due process purposes as if stopped at the border." *Thuraissigiam*, 591 U.S. at 139 (internal quotation marks omitted); *see* 8 U.S.C. § 1182(d)(5)(A) (noting that paroled aliens are not admitted and are "dealt with in the same manner as that of any other applicant for admission to the United States"); 8 C.F.R. § 1.2 (same).

In response, Torres-Coronado relies on a pair of decisions from the Western District of Texas that reached the opposite conclusion.[4]  Those cases, in turn, rely on a series of other cases from courts in that District, the chief of which is *Lopez-Arevelo v. Ripa*, where the Western District distinguished *Thuraissigiam* as a case regarding due-process rights in matters of deportation, as opposed to detention.  801 F. Supp. 3d 668, 682 (W.D. Tex. 2025).  That court also cited the decisions of several circuit courts that analyzed Section 1226-based due-process claims.  *Id.* at 683.  On that reasoning, it applied *Mathews* and ordered the petitioner's release.  *Id.* at 685–88.  But *Lopez-Arevelo* is unpersuasive for several reasons.

First, *Lopez-Arevelo*'s characterization of *Thuraissigiam* is almost the reverse of the Supreme Court's reasoning and holding.  True, the *Thuraissigiam* petitioner did not seek "release from custody."  591 U.S. at 115.  He sought only to secure further opportunity for immigration relief.  *Id.*  But the Court denied the petitioner's due process claim in reliance on "more than a century of precedent."  *Id.* at 138.  Unsurprisingly, that long legal tradition, which *Lopez-Arevelo* does not address, rested upon aliens seeking release from detention.  *See, e.g.*, *Nishimura Ekiu v. United States*, 142 U.S. 651, 660 (1892) (recognizing the baseline requirements and limits of habeas corpus for unadmitted aliens).  Far from suggesting a divergence, *Thuraissigiam* reinforced a longstanding tradition that "an alien seeking initial admission to the United States requests a privilege and has no constitutional rights regarding his application."  591 U.S. at 139 (quoting *Landon*, 459 U.S. at 32).  That includes detention as much as it includes the underlying deportation proceeding.

---

[4] *Cumbe Lema v. De Anda-Ybarra*, No. 3:26-CV-249, Dkt. No. 7 (W.D. Tex. Feb. 9, 2026); *Hassen v. Noem*, No. 3:26-CV-048, Dkt. No. 8 (W.D. Tex. Feb. 9, 2026).

Second, and relatedly, recent Supreme Court precedent suggests pre-removal detention cases are cut from the same cloth as *Thuraissigiam*. In *Demore*, the Supreme Court reasoned that "deportation proceedings 'would be in vain if those accused could not be held in custody pending the inquiry into their true character.'" 538 U.S. at 523 (quoting *Wong Wing v. United States*, 163 U.S. 228, 235 (1896)). It therefore upheld a petitioner's mandatory detention "for the limited period of his removal proceedings" under Section 1226(c). *Id.* at 531. Congress provided process, and the petitioner in that case was not due anything more.

Third, the *Lopez-Arevelo* court errs in suggesting that due process is distinguished by "place—not status." 801 F. Supp. 3d at 684; *Ochoa v. Vergara*, ___ F. Supp. 3d ___, No. 1:26-CV-266, 2026 WL 482211, at *2 (W.D. Tex. Feb. 20, 2026) (same). That suggestion cannot be squared with *Thuraissigiam*, which makes clear that "place" is not the relevant consideration and dismissed place-based distinctions as rendering the traditional admission-based system of due process for aliens "meaningless." 591 U.S. at 139. "On the contrary," it said, "aliens who arrive at ports of entry—even those paroled elsewhere in the country *for years* pending removal—are treated for due process purposes as if stopped at the border." *Id.* (emphasis added) (internal quotation marks omitted).

Fourth, the case law upon which *Lopez-Arevelo* relies provides no persuasive reasoning in its favor. Only one of the circuit cases on which it relies provides its reasoning for applying the *Mathews* factors, and even that decision fails to consider the Supreme Court's emphasis on limited process articulated in *Thuraissigiam*, *Landon*, *Demore*, and many other cases. *Black v. Decker*, 103 F.4th 133, 147–51 (2d Cir. 2024) (adopting *Mathews* because of the consensus of other circuits and the Supreme Court's application of *Mathews*

– 10 –

outside of the immigration context).  In light of these considerations, *Lopez-Arevelo* fails to persuade.  *See also Diaz Patino*, 2026 WL 673166, at \*4–5 (same).

With Section 1225, Congress set the procedural rights afforded to aliens who are present in the United States without admission.  "Read most naturally," Section 1225(b)(2)(A) "mandate[s] detention of applicants for admission until certain proceedings have concluded."  *Jennings v. Rodriguez*, 583 U.S. 281, 297 (2018).  No part of the statute "says anything whatsoever about bond hearings."  *Id.*  Accordingly, Torres-Coronado is not entitled to a bond hearing as a matter of procedural due process.

**C.      The Northern District of California's December 2025 order is not binding on this Court.**

Torres-Coronado also seeks relief as a member of two different actions from California federal courts.  The first of these is *National TPS Alliance v. Noem*, from the Northern District of California.  *See* Dkt. No. 8 at 7.  In his view, that Court's December 10, 2025 order declaring the Trump administration's termination of TPS for Venezuelan nationals to be unlawful "controls the case at bar, as to the question of whether [Torres-Coronado] retain[s his] TPS status."  Dkt. No. 8 at 7.

The problem for Torres-Coronado is that the Northern District does not even purport to have issued a ruling that binds other district courts.  As that court explained, the purpose of its December 10 order was, in part, to "preserve the pending status quo" for Venezuelan TPS holders, "possibly in individual actions where an individual member *might* receive some benefit from the declaratory judgment."  2025 WL 3539156, at \*2 (emphasis added).  In other words, the Northern District recognized its own words were perhaps persuasive but did not modify the Supreme Court's stay of vacatur relief or affect the then-pending Ninth Circuit appeal in that case.  *See id.* at \*2–3.

It is well established that the "decision of a federal district court judge is not binding precedent in . . . a different judicial district." *Camreta v. Greene*, 563 U.S. 692, 709 n.7 (2011); *Quintero v. Francis*, No. 25-CV-10107, 2026 WL 265921, at *8 (S.D.N.Y. Feb. 2, 2026) (rejecting an identical TPS claim arising from the December 10 order).  For that reason alone, the Northern District's decision is not binding.[5]  Moreover, the Supreme Court stayed the order vacating the termination of the Venezuelan TPS program.  *See* 146 S. Ct. 23.  Thus, that program, for purposes of 8 U.S.C. § 1254a, is terminated and does not control the disposition of this case.  *See Diaz Patino*, 2026 WL 673166, at *1 n.1.

**D.      The *Maldonado Bautista* class action is not binding on this Court.**

Torres-Coronado also relies on a class action from the Central District of California, *Maldonado Bautista v. Santacruz*, No. 5:25-CV-1873 (C.D. Cal.).  But the Court is not required to resist Fifth Circuit precedent to adopt the *Maldonado Bautista* class action, as Torres-Coronado suggests.  *See* Dkt. No. 8 at 17–20.  On March 6, 2026, the Ninth Circuit issued an administrative stay limiting the purported class-wide declaratory relief issued in that case to the Central District of California only.  *Maldonado Bautista v. DHS*, No. 26-1044, Dkt. No. 5 at 1 (9th Cir. Mar. 6, 2026).  The Central District's February 18 order, which purports to vacate *Yajure Hurtado*, was also stayed.  *Id.* at 2.  Both orders are stayed pending a ruling on the respondent-appellants' emergency motion for a stay pending appeal.  *Id.* at 1–2.  At this time, there is no assertion that the Central District's orders can have preclusive

---

[5] Even if that decision purported to preclude consideration of the TPS issue in other courts, this Court would not be bound to abide by it.  As this Court explained in *Calderon Lopez*, standalone declaratory judgments that do not impact the parties' legal relations—as here, where the Supreme Court has stayed all of the Northern District's prior, substantive relief—act as the issuing courts' "mere opinion" and "[are] thus 'contrary to Article III's strict prohibition on issuing advisory opinions.'" *Calderon Lopez*, 2025 WL 3683918, at *8 (quoting *Haaland v. Brackeen*, 599 U.S. 255, 294 (2023)).  Such decisions are not binding on fellow district courts.

effect on this Court. And even if the stay were lifted, the Court would deny Torres-Coronado's claim for the reasons articulated in its prior decision in *Calderon Lopez*, 2025 WL 3683918, at *10–14.

**4.    Conclusion**

In short, Torres-Coronado, as an "applicant for admission," is properly detained without bond under Section 1225(b)(2)(A). *Buenrostro-Mendez*, 166 F.4th at 498. The two California district court cases on which Torres-Coronado relies are not binding on this Court. And the Due Process Clause does not require a bond hearing in these circumstances. Thus, the petition for a writ of habeas corpus (Dkt. No. 8) is denied.

The Clerk of Court is directed to serve this Order electronically on the United States Attorney's Office for the Northern District of Texas pursuant to the current Service of Process Agreement for federal habeas petitions under 28 U.S.C. § 2241.

So ordered on March 23, 2026.

_____
JAMES WESLEY HENDRIX
UNITED STATES DISTRICT JUDGE